Filed 11/18/21  In re Sarai P. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re SARAI P. et al., Persons Coming Under the Juvenile Court Law. | B310977 (Super. Ct. No. 19CCJP03500C-F) Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DAMARY P.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Damary P. (mother) allowed her husband, Joel P. (father), to have unrestricted access to mother's four children on numerous occasions in violation of court orders restricting father's contact with the children.  The juvenile court sustained allegations in various petitions as to all four children because mother, by violating the court's orders, "created a detrimental and endangering home environment" for the children and thereby placed them "at risk of serious physical harm, damage, danger, and failure to protect."  Mother appealed.  Although mother's entire appeal could properly be dismissed as moot, we exercise our discretion to consider the merits, and conclude that substantial evidence supports the juvenile court's findings.  Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Facts

#### A.  *The family*

Father and mother married in May 2017.  They have two children together—Sarai P. (born April 2018) and Jared P. (born January 2020).  Mother also has two older children by another

father—Bryan M. (born December 2006) and Jaime M. (born August 2011).

## B. *Father's acts of domestic violence*

One night in April 2019, father straddled mother's body while on their bed, strangled her until she lost consciousness, and then slapped her 10 times on the cheeks. Sarai was awake and on the bed the whole time. When police arrived, they noticed redness on mother's face. Mother told police that this was not the first time father had been physical with her. Bryan confirmed that this was not the first such incident.

## II. Procedural Background

### A. *Father's contact with the children is restricted*

#### 1. *As to Sarai, Bryan, and Jaime*

On June 3, 2019, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exercise dependency jurisdiction over Sarai, Bryan, and Jaime.[1] The petition alleged the facts underlying the April 2019 incident, and invoked jurisdiction on two grounds—namely, that mother and father's "history of engaging in violent verbal and physical altercations in the presence of the children" created (1) "substantial risk that [they] will suffer[] serious physical harm inflicted nonaccidentally upon the child[ren] by the child[ren]'s parent or guardian" (thereby rendering jurisdiction appropriate under Welfare and Institutions Code section 300, subdivision (a)),[2] and (2) "substantial risk that the child[ren] will suffer[] serious physical

---

[1] Jared was not yet born at this time.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

harm . . . as a result of the failure . . . of . . . [their] parent or legal guardian to supervise or protect [them]" (thereby rendering jurisdiction appropriate under section 300, subdivision (b)).

In an August 13, 2019 order, the juvenile court sustained the allegations as to mother and father. The children were removed from both parents; Sarai was placed in a foster home; and Bryan and Jaime were placed with their father. The court ordered father to have only monitored visits with Sarai, and mother was not to be present during those visits. The court also ordered father to have no contact with Bryan. Father's case plan included a 52-week domestic violence class and individual counseling; mother also had to participate in a domestic violence support group and counseling.

Father appealed the juvenile court's jurisdictional findings, and we affirmed in an unpublished opinion. (*In re Sarai P.* (Apr. 30, 2020, B300024).) Mother did not appeal.

2.     *As to Jared*

On March 16, 2020, the Department filed a petition asking the juvenile court to exercise dependency jurisdiction over then two-month-old Jared. The petition made the same allegations regarding the April 2019 incident, invoked jurisdiction on the same grounds as those asserted in the siblings' petition (that is, under section 300, subdivisions (a) and (b)), and added an additional ground—namely, that Jared's siblings have been "neglected" and "there is a substantial risk that [Jared] will be . . . neglected" (thereby rendering jurisdiction appropriate under section 300, subdivision (j)).

Father contested parentage over Jared, and on March 20, 2020, the juvenile court ordered father not to have any contact

4

with Jared pending paternity results.  Jared remained in mother's care.

Father was not granted monitored visits with Jared until October 29, 2020, when his paternity was confirmed.

### B.     *The children are returned to mother's care*

Sarai, Bryan, and Jaime were returned to mother's care in February 2020.  The juvenile court terminated dependency jurisdiction over Bryan and Jaime in September 2020.

### C.     *Father's dangerous conduct continues*

Throughout the proceedings, father denied the April 2019 incident, made light of his domestic violence classes, and continued to engage in violent conduct.

Father denied ever touching mother and claimed that the "whole case" was a "conspiracy against him set up by" mother. During individual counseling sessions, father referred to himself as the victim of domestic violence rather than the aggressor.

Father complained that his domestic violence classes were "a waste of time" and "money" because, according to father, he is an "alpha male" who "will not become submissive to anyone" and the classes "take the man away from you."  Father also claimed that hearing about other participants' experiences during the classes made him "more violent."

Indeed, in April 2020, father was arrested for brandishing a firearm when he became "irate" during an argument with another man who blocked father's path while he was driving. During his interactions with the Department's social workers, father behaved in a "controlling, argumentative, and defensive" manner.

**D.** *Mother allows father unrestricted contact with the children*

Mother ignored the court orders expressly restricting father's contact with the children.

The Department reported in January 2020 that Bryan and Jaime "continue to be extremely fearful" of father and had seen pictures of father with Sarai on mother's phone. The Department expressed concern in March 2020 that mother and father were "minimizing the no contact order" because mother was allowing father to sleep in the family home. Around that time, a person named "Joe" called the police from mother's address reporting that he was punched by another man; father attempted to explain that someone must have falsely used his name, but the police call log identified father's phone number as the caller. In summer 2020, mother, father, and the children went on a trip to a river.

On September 24, 2020, father posted photos to his Facebook profile of Sarai and father posing on a motorcycle in mother's backyard. When the Department questioned the parents about this unsupervised contact between father and Sarai, they provided inconsistent explanations. Father stated that he sees the children "every day" and that mother's neighbor is his monitor. Mother denied ever giving father access to the children. She explained that her neighbor watches the children on the weekends while she works and that, because the neighbor and father are friends, the neighbor must have allowed father to see Sarai. Mother also stated that when she confronted father about the photographs, he told her that he went to visit the neighbor to show him the motorcycle father just bought and the neighbor happened to be watching the children at mother's

6

house.  The neighbor provided yet another version of the story—he stated that he watches Sarai and Jared on the weekends but that the children receive no visits and he does not monitor any visits in mother's home.

Despite telling the Department that she had no plans to reconcile with father, mother confirmed in January 2021 that she was pregnant with another child by father; that child was born in April 2021.

### E.     *The Department's further petitions*

On October 29 and December 9, 2020, the Department filed three separate petitions as to mother's four children.  Each petition was based on the same allegation:  Mother violated court orders on "multiple prior occasions" by allowing father to have "unmonitored contact and unlimited access to the children," which "endangers the child[ren]'s physical health and safety and places the child[ren] at risk of serious physical harm, damage, and failure to protect."  However, because each child was differently situated, the petitions were procedurally distinct:  (1) as to Sarai, the Department filed a supplemental petition under section 387 asking the juvenile court to change the prior disposition and remove Sarai from mother's care; (2) as to Bryan and Jaime, the Department filed an original petition asking the juvenile court to exert dependency jurisdiction under section 300, subdivision (b); and (3) as to Jared, the Department filed a first amended petition adding another basis for dependency jurisdiction under section 300, subdivision (b).

### B.     *The juvenile court's orders*

On February 24, 2021, the juvenile court held a combined adjudication and disposition hearing on the various petitions.

The court made several findings on the petitions: (1) as to Sarai, the court sustained the supplemental allegation under section 387 that mother's violation of the court orders restricting father's access to the children endangered Sarai and placed her "at risk of serious physical harm, damage and danger"; (2) as to Bryan and Jaime, the court sustained the allegation under section 300, subdivision (b), that mother "created a detrimental and endangering home environment for the children" by violating the court orders restricting father's access to the children, which placed Bryan and Jaime "at risk of serious physical harm, damage, danger, and failure to protect"; and (3) as to Jared, the court sustained the allegation under section 300, subdivision (j), regarding the April 2019 domestic violence incident and the allegation under section 300, subdivision (b), regarding mother's violation of the court orders restricting father's access to the children; the court did not exert jurisdiction over Jared based on subdivisions (a) and (b) of section 300 regarding the April 2019 incident.

The court explained that mother's "blatant disregard" for the orders restricting father's visits was "willful." The court emphasized that the orders were "put in place for the very serious allegations" regarding father "inflicting domestic violence upon the mother," yet mother "has consistently . . . minimized" that "violent conduct" and father "has indicated that he's not going to follow any court orders" because "[h]e is alpha." The court went on to find that mother's claim that she had no desire to reconcile with father was not "credible" because she made the same representation before Jared was born and was making it again despite being pregnant with her third child by father.

8

The juvenile court removed all four children from mother, placed Sarai and Jared in foster care, placed Bryan and Jaime with their father, and granted mother monitored visits.

**C.     *Mother appeals***

Mother filed this timely appeal.

**D.     *Postappeal events***

On May 25, 2021, the Department filed a subsequent petition under section 342 requesting that the juvenile court exert dependency jurisdiction over Bryan and Jaime based on new facts or circumstances—namely, that they were physically abused by *their* father.  The juvenile court sustained the allegations, but found that mother was a nonoffending parent and placed Bryan and Jaime with mother.

On June 24, 2021, the juvenile court returned Sarai and Jared to mother's care.

## DISCUSSION

Mother challenges the juvenile court's February 24, 2021 jurisdictional findings and dispositional orders.  Because the children have been returned to mother's care, we previously dismissed as moot that portion of mother's appeal challenging the dispositional orders.[3]  While the remainder of mother's appeal is fraught with defects of nonjusticiability, forfeiture, and mootness, we elect to exercise our discretion to consider the merits of mother's challenges to the juvenile court's jurisdictional findings and conclude that substantial evidence supports those findings.

---

[3]     Father also appealed, but we dismissed the entirety of father's appeal as moot in that same order.

9

## I.      Defects in Mother's Appeal

In dependency proceedings, the basic pleading device to assert a child falls within the juvenile court's jurisdiction is a petition.  "'It may be [(1)] an original petition (§ 332), [(2)] a subsequent petition for children who are already dependents when there are "new facts" or circumstances that bring them within a category of section 300 "other than those under which the original petition was sustained" (§ 342), or [(3)] a supplemental petition when there are facts which indicate that a previous disposition is not appropriate (§ 387).'"  (*In re A.B.* (2014) 225 Cal.App.4th 1358, 1364 (*A.B.*).)

Each of these three types of petitions is at issue in this case, and their unique functions establish that mother's appeal is not justiciable, is forfeited, or is moot.[4]

### A.      *Mother's appeal as to Jared*

First, mother's challenge to the juvenile court's exertion of jurisdiction over Jared is not justiciable.

The court exerted jurisdiction over Jared under subdivisions (b) and (j) of section 300, based on mother allowing father unrestricted access to the children and based on the April 2019 domestic violence incident, respectively.  On appeal, mother challenges only the first basis.  A single basis for jurisdiction is enough to support the exertion of jurisdiction over a child.  (*In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.)  Thus, mother's challenge to the jurisdictional finding under section 300, subdivision (b), as to

_____

[4]      While the Department vaguely alluded to such defects in its conclusory, eight-page motion to dismiss, the first time the Department clearly articulated its arguments on these threshold issues was in its respondent's brief.

Jared is not justiciable because, no matter what we decide on this appeal regarding that basis, the juvenile court's jurisdiction will remain valid by virtue of the finding under section 300, subdivision (j) that mother does not challenge. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762 (*Drake M.*); *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.) Mother belatedly tries to attack the subdivision (j) finding in her reply brief, but that comes too late to be cognizable on appeal. (*In re Luke H.* (2013) 221 Cal.App.4th 1082, 1090.)

### B. *Mother's appeal as to Sarai*

Second, mother raises no cognizable challenge to the juvenile court's order sustaining the section 387 supplemental petition as to Sarai because, among other reasons, mother failed to appeal from the court's original exertion of jurisdiction over Sarai from which the section 387 petition arises.

When the Department seeks to change the placement of a dependent child to a more restrictive placement, such as foster care, it must file a section 387 supplemental petition. (*In re F.S.* (2016) 243 Cal.App.4th 799, 808.) The petition must allege facts establishing that a previous disposition order was ineffective, but it does not need to allege any new jurisdictional facts or urge additional grounds for dependency. (*Ibid.*) That is because the juvenile court already has jurisdiction over the child based on jurisdictional findings on the original petition; the section 387 supplemental petition to modify placement does not affect the underlying jurisdiction of the court. (*Ibid.*; *In re Joshua G.* (2005) 129 Cal.App.4th 189, 203; *Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1077; *In re A.O.* (2010) 185 Cal.App.4th 103, 110 ["'The law does not require that a fact necessary to establish jurisdiction under section 300 be established to warrant

a change in placement'"].)  Here, even if we ignore that mother did not offer any reasoned argument as to why the section 387 supplemental petition was invalid as to Sarai, mother has not— and, indeed, *cannot*—attack the underlying basis for jurisdiction over Sarai based on the April 2019 domestic violence incident, a basis she did not previously appeal.

### C.  *Mother's appeal as to Bryan and Jaime*

Third, the Department argues that mother's challenge to the juvenile court's exertion of jurisdiction over Bryan and Jaime is moot because after mother appealed, the court sustained a subsequent petition under section 342 alleging new facts of physical abuse of Bryan and Jaime by their father.  To be sure, juvenile dependency jurisdiction attaches to the child, not to the parent.  (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 (*I.A.*).)  As a result, an appeal becomes moot where subsequent events, such as the juvenile court's exercise of jurisdiction based on an independent basis (see § 342 ["new facts or circumstances . . . sufficient to state that the [child] is a [dependent]"]), render it impossible for the reviewing court to grant effective relief (*In re Travis C.* (2017) 13 Cal.App.5th 1219, 1224-1225; *In re E.T.* (2013) 217 Cal.App.4th 426, 436 (*E.T.*); *A.B.*, *supra*, 225 Cal.App.4th at p. 1364 ["so long as the jurisdictional finding under the subsequent petition is supported by substantial evidence, reversal of the jurisdictional finding under the original petition would be futile"]).  Appellate courts nevertheless review whether a dependency appeal is moot on a "'case-by-case basis'" (*In re J.P.* (2017) 14 Cal.App.5th 616, 623) and retain the "discretion" to hear the merits of a challenge to a jurisdictional finding, even if overturning that finding will have no immediate

12

effect on the juvenile court's assertion of jurisdiction (*I.A.*, 201 Cal.App.4th at pp. 1494-1495).

Here, mother was found to be a nonoffending parent in the section 342 petition alleging new facts of physical abuse of Bryan and Jaime by their father. Because mother is not implicated in that subsequent petition, and because the jurisdictional findings at issue in this appeal specifically relate to mother's conduct and could affect the outcome of subsequent proceedings involving mother, we exercise our discretion to consider mother's challenge to the juvenile court's exertion of jurisdiction over Bryan and Jaime under section 300, subdivision (b). (*E.T.*, *supra*, 217 Cal.App.4th at p. 436; *Drake M.*, *supra*, 211 Cal.App.4th at pp. 762-763.)

### D. *The allegation is common to all four children*

Ultimately, because that challenged jurisdictional finding— namely, that by allowing father unrestricted access to the children, mother placed the children at substantial risk of harm—is a fact common to *all* four children, we exercise our discretion, particularly in service of judicial efficiency, to consider the merits of mother's appeal despite the defects of justiciability, forfeiture, and mootness discussed above.

## II. The Merits

The juvenile court's jurisdictional findings are supported by substantial evidence. We evaluate the sufficiency of the evidence supporting a juvenile court's jurisdictional finding by asking whether there is enough evidence in the record that is reasonable, credible, and of solid value that a reasonable trier of fact could reach the same conclusion as the juvenile court. (*In re K.B.* (2015) 239 Cal.App.4th 972, 979-980; see also *In re D.D.*

13

(2019) 32 Cal.App.5th 985, 990 [substantial evidence review of an order sustaining a section 387 supplemental petition].)

As pertinent here, a juvenile court is empowered to assert dependency jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child." (§ 300, subd. (b).) *Risk* of harm means just that: The juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction." (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383 (*Kadence P.*); *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993 (*Yolanda L.*) [same].) When it comes to assessing that risk, the juvenile court may look to a parent's past behavior as a "good predictor" of whether the child is currently at risk. (*In re T.V.* (2013) 217 Cal.App.4th 126, 133; *Kadence P.*, at pp. 1383-1384.)

Substantial evidence supports the juvenile court's findings that all four children were at substantial risk of harm as a result of mother allowing father unrestricted access to the children in violation of court orders. Father's reported act of domestic violence on mother was severe, and he physically attacked mother with Sarai an arm's length away. This was also not the first incident. Father never took responsibility for his abusive conduct—instead, he admittedly became "more violent" and he took pride in exerting his perceived dominance over others. The juvenile court restricted father's visits with mother's children to protect them from this uncontrolled behavior. Yet, mother flouted the court's orders. She allowed father to stay in her home even though Bryan and Jaime expressed they were fearful of father; she took the children on a trip with father even after he

14

was arrested for brandishing a firearm in a fit of road rage; and she conceived another child with father even though she expressed that she had no intention of reconciling with him. Viewing the record in the light most favorable to the court's findings (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), mother's permissive conduct allowing father to have full access to the children despite father's refusal to reform, let alone acknowledge, his violent behavior certainly evinces a risk of harm.

Mother raises what boils down to two arguments in response.

She argues that the children were not at substantial risk of harm at the time of February 2021 adjudication hearing because the April 2019 domestic violence incident did not pose a current risk to the children given no similar incidents occurred in the intervening two years. Mother minimizes the substantiated reasons the juvenile court found the children at risk—besides the April 2019 incident itself, mother and father both denied the incident occurred (see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598-599 [parent's denial of domestic violence increases risk]), father continued to engage in aggressive behavior with others, father trivialized the insight he should have gained from his domestic violence classes, and mother included father as a member of the family despite these clear indicia of risk. The court did not need to wait until father's violent tendencies caused harm to any of the children. (*Kadence P.*, *supra*, 241 Cal.App.4th at p. 1383; *Yolanda L.*, *supra*, 7 Cal.App.5th at p. 993; see also § 300.2 [purpose of dependency statutes is to ensure "safety" and "protection" of children "who are at risk of harm"].)

Mother also argues that she is not to blame for the "isolated incident" when father showed Sarai his motorcycle at mother's

15

home in defiance of the court order restricting his visitation. Mother misconstrues the record. Mother facilitated father's continuous, unrestricted access to the children—the Department merely obtained photographic evidence of one interaction that confirmed its months'-long concerns. We must reject mother's invitation to ignore the abundance of evidence indicating this was not an "isolated incident." (See *In re Noe F.* (2013) 213 Cal.App.4th 358, 366 [appellate court does not reweigh the evidence].)

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ